*946 GOLDBERG, Judge:
Vital Pharmaceuticals, Inc. (“VPX”) markets'a dietary supplement called VPX Meltdown Fat Incinerator (“Meltdown”), which it advertises for fat loss. Adam Karhu purchased the supplement in reliance on Meltdown’s advertising. Karhu brought class-action suit, alleging that Meltdown’s advertising is false, insofar as Meltdown does not aid fat loss.
Karhu moved to certify class of nationwide Meltdown purchasers as well as a subclass of New York purchasers. Certification is governed by Federal Rule of Civil Procedure 23. Under Rule 23, certification is proper where the proposed classes satisfy an implicit ascertainability requirement, the four requirements listed in Rule 23(a), and the requirements listed in any of .Rule 23(b)(1), (2), or (3). Little v. T-Mobile USA Inc., 691 F.3d 1302, 1304 (11th Cir.2012). The district court denied Karhu’s motion,' holding that the proposed classes satisfied neither Rule 23’s implicit ascertainability requirement, nor the requirements listed in either Rule 23(b)(2) or (3).[1] Karhu moved to alter or amend the order denying class certification, which the district court also denied.
Karhu appeals. He claims that the district court erred to hold that (1) neither proposed class satisfied the ascertainability requirement, and (2) the New York subclass failed to satisfy Rule 23(b)(3)’s requirements. We hold that the district court’s ascertainability decision was proper. We therefore affirm without reaching the district court’s Rule 23(b)(3) decision.
I. BACKGROUND
A. -Legal Framework for the Ascer-tainability Requirement
“The burden of establishing the[ requirements of certification under Rule 23] is on the plaintiff who seeks to certify the suit as a class action.” Heaven v. Trust Co. Bank, 118 F.3d 735, 737 (11th Cir.1997). Rule 23 implicitly requires that the “proposed class is adequately defined and clearly ascertainable.” Little, 691 F.3d at 1304 (internal quotation marks omitted).
In the past, this court has stated that a class is not ascertainable unless the class definition contains objective criteria that allow for class members to be identified in an administratively feasible way. Bussey v. Macon Cnty. Greyhound Park, Inc., 562 Fed.Appx. 782, 787 (11th Cir.2014). Identifying class members is administratively feasible when it is a “manageable process that does not require much, if any, individual inquiry.” Id. (internal quotation marks omitted).
B. The District Court’s Order Denying Karhu’s Motion for Class Certification
Invoking these rules, the district court denied Karhu’s motion for class certification, holding that Karhu had failed to establish that his proposed classes were ascertainable. Although Karhu’s class definitions contained objective criteria, Karhu “ha[d] failed to propose a realistic method of identifying the individuals who purchased Meltdown.” Karhu had proposed that the court use VPX’s “sales data,” but VPX sold primarily to “distributors and retailers,” such that VPX’s records could not be used to determine “the identities of most [class] members.”
The court also considered, apparently of its own accord, whether allowing class members to come forward and identify themselves through sales receipts or affi *947 davits would render the classes ascertainable. The court rejected the receipts-based method on grounds that Meltdown’s low cost meant most class members would not retain their proof of purchase.
The district court also rejected the affidavit-based method. The court had several concerns. If, on the one hand, “affidavits of Meltdown purchases [were accepted] without verification,” VPX would be deprived “of its due process rights to challenge the claims of each putative class member.” “On the other hand, allowing VPX to contest each affidavit would require a series of mini-trials” to determine class membership, which would not be administratively feasible. Moreover, “[u]sing affidavits to determine class membership would also invite fraudulent submissions and could dilute the recovery of genuine class members.”
C. Karhu’s Motion to Alter or Amend the Order Denying Class Certification, and the District Court’s Order Denying Karhu’s Motion
Karhu moved to alter or amend the order denying certification pursuant to Rule 23(c)(1)(C). Karhu argued, inter alia, that new evidence showed that VPX sold Meltdown primarily to third-party retailers, such that class members could be identified by subpoenaing records from retailers. According to Karhu, proposing that class members could be identified using the records of third-party retailers was sufficient to satisfy the aseertainability requirement.
The district court denied Karhu’s motion for reconsideration. The court reasoned that Karhu’s subpoena-based method was not predicated on new evidence at all: Ka-rhu had come up with the method by examining VPX’s sales data, which had been available to Karhu well before he moved for class certification. Therefore, the district court would not accept such a description as grounds for reconsideration.
II. DISCUSSION
Karhu appeals, claiming, inter alia, that the district court abused its discretion in the order denying class certification by holding that Karhu had failed to establish that his proposed classes were ascertainable.[2] We affirm the district court’s aseertainability decision.
As noted, the plaintiff seeking certification bears the burden of establishing the requirements of Rule 23, including aseer-tainability. Heaven, 118 F.3d at 737. In' order to establish aseertainability, the plaintiff must propose an administratively feasible method by which class members can be identified. See Stalley v. ADS Alliance Data Syst., Inc., 296 F.R.D. 670, 679-80 (M.D.Fla.2013) (denying certification because “the Court ha[d] not been presented with reasonable methods for ascertaining the identity of the [class members, that is] individuals who answered [the defendant’s] collection calls”); Hill v. T-Mobile, USA, Inc., No. 2:09-cv-1827-VEM, 2011 WL 10968888, at *10-11 (N.D.Ala. May 16, 2011) (holding aseertainability not established where plaintiffs had proposed “creating a class list using T[-]Mobile’s databases,” because plaintiffs “ha[d] not addressed how to effectively back out from such a list” the identities of persons not eligible for class-action relief); see also Bussey, 562 Fed.Appx. at 788 (revising *948 class definition to cover only loyalty-card-using gamblers who lost money during a gaming session — rather than during a specific game — because plaintiffs “ha[d] not provided any indication that they have, or even that they can obtain, data about losses at the game level”); cf. Carrera v. Bayer Corp., 727 F.3d 300, 306-07 (3d Cir.2013) (“A plaintiff may not merely propose a method of ascertaining a class without any evidentiary support that the method will be successful.”).
A plaintiff cannot establish ascertainability simply by asserting that class members can be identified using the defendant’s records; the plaintiff must also establish that the records are in fact useful for identification purposes, and that identification will be administratively feasible. See Stalley, 296 F.R.D. at 679-30 (holding ascertaina-bility not established where plaintiffs proposed that “members of the class [of actual recipients of defendant’s calls] ... be identified and notified based on [the defendant’s] own records,” because the defendant’s records indicated “merely the intended recipients” (internal quotation marks omitted)); Hill, 2011 WL 10958888, at *10-11; see also Bussey, 562 Fed.Appx. at 788 (revising class definition to encompass only persons who could, in fact, be identified using the defendant’s records).
Similarly, a plaintiff cannot satisfy the ascertainability requirement by proposing that class members self-identify (such as through affidavits) without first establishing that self-identification is administratively feasible and not otherwise problematic. See Fisher v. Ciba Specialty Chems. Corp., 238 F.R.D. 273, 301-02 (S.D.Ala.2006) (rejecting “plaintiffs’ optimistic argument that prospective class members could be counted on to self-select”); LaBauve v. Olin Corp., 231 F.R.D. 632, 684 (S.D.Ala.2005) (holding possibility of publication notice does not establish as-certainability in part because “certain people may respond to publication notice even though they were not [part of the class]”); Perez v. Metabolife Int’l, Inc., 218 F.R.D. 262, 269 (S.D.Fla.2003) (holding ascertaina-bility not established when “the only evidence likely to be offered in many instances will be the putative class member’s uncorroborated claim that he or she used the product”). The potential problems with self-identification-based ascertainment are intertwined. On the one hand, allowing class members to self-identify without affording defendants the opportunity to challenge class membership “provide[s] inadequate procedural protection to ... [d]efendant[s]” and “implicate^ their] due process rights.” Perez, 218 F.R.D. at 269; see also LaBauve, 231 F.R.D. at 684 (citing Perez); cf. Marcus v. BMW of N. Am., LLC, 687 F.3d 583, 594 (3d Cir.2012) (“Forcing BMW and Bridgestone to accept as true absent persons’ declarations that they are members of the class, without further indicia of reliability, would have serious due process implications.”).[3] On *949 the other hand, protecting defendants’ due-process rights by allowing them to challenge each claimant’s class membership is administratively infeasible, because it requires a “series of mini-trials just to evaluate the threshold issue of which [persons] are class members.” Fisher, 238 F.R.D. at 302; see also Perez, 218 F.R.D. at 269 (“[I]ndividualized mini-trials would be required even on the limited issue of class membership.”).[4] A plaintiff proposing ascertainment via self-identification, then, must establish how the self-identification method proposed will avoid the potential problems just described.[5]
In light of these standards, the district court’s ascertainability holding was not an abuse of discretion. Karhu’s proposal to identify class members using VPX’s “sales data” was incomplete, insofar as Karhu did not explain how the data would aid class-member identification. Nor was any potential identification procedure obvious: VPX’s sales data identified mostly third-party retailers, not class members. Karhu did not explain to the court that it envisioned a three-step identification process: (1) Use the sales data to identify third-party retailers, (2) subpoena the retailers for their records, and.(3) use those records to identify class members. Therefore, the district court acted within its discretion when it rejected Karhu’s proposal to identify class members via VPX’s “sales data.”
The district court likewise acted within its discretion when it rejected identification via affidavit. Because Karhu had not himself proposed an affidavit-based method, he necessarily had not established how the potential problems with such a method would be avoided. Without a specific proposal as to how identification via affidavit would successfully operate, the district court had no basis to accept the method. We therefore uphold the district court’s ascertainability holding in full.
Karhu’s arguments that we construe the ascertainability requirement too strictly do not convince. For example, Karhu is incorrect that a strict ascertainability requirement conflicts with Klay v. Humana, Inc., 382 F.3d 1241, 1271-72 (11th Cir. 2004). In May, we held that the district court did not abuse its discretion by finding that class-action resolution was superi- or under Rule 23(b)(3), even though individualized issues of reliance, causation, and damages would have to be resolved as to particular class members. Id, Although these individualized issues implicated the manageability of the case — a consideration *950 under Rule 23(b)(3) — we reasoned that manageability concerns “will rarely, if ever, be in [themselves] sufficient to prevent certification of a class.” Id. at 1272. Karhu argues that a strict ascertainability requirement violates the Klay principle that a concern about case manageability should not stand in the way of certification.
Not so. Klay addressed manageability concerns that a court might face after class members have already been identified — for example, concerns about whether particular class members are entitled to relief in light of individualized reliance, causation, and damages issues. Id. at 1273. Aseer-tainability, by contrast, addresses whether class members can be identified at all, at least in any administratively feasible (or manageable) way. Put differently, the manageability concern at the heart of the ascertainability requirement is prior to, hence more fundamental than, the manageability concern addressed in Klay. Klay therefore presents no bar to our holding.
Karhu is also incorrect that a strict as-certainability requirement will eradicate small-dollar class-action claims. Karhu argues that small-dollar plaintiffs will not be able to propose an administratively feasible method by which class members can be identified. Karhu’s own briefing illustrates why his fear is unfounded. According to. Karhu, his counsel has before succeeded in proposing administratively feasible identification methods. For example, in In re Scotts EZ Seed Litig., No. 12-cv-4727 (S.D.N.Y. Jun. 15, 2012), plaintiffs established that many purchasers of EZ Seed could be identified by subpoenaing third-party retailor Wal-Mart for its customer records (and in fact did so subpoena Wal-Mart). The district court later held that Karhu had satisfied the ascer-tainability requirement. In re Scotts EZ Seed Litig., 304 F.R.D. 397, 406-08 (S.D.N.Y.2015).
Relatedly, Karhu might have satisfied the ascertainability requirement in this very case. In his motion to alter or amend the order denying class certification, Karhu explained that VPX sold Meltdown primarily to third-party retailers, and proposed identifying class members by subpoenaing the retailers for their records. The district court took no issue with the abstract principle that a plaintiff could satisfy the ascertainability requirement by proposing a subpoena-based method for identifying class members. Rather, the district court held only that Karhu should have proposed the method in his class-certification papers, instead of only upon moving to alter or amend. Had Karhu done so, he might well have satisfied the ascertainability requirement before the district court.[6]
In sum, a plaintiff establishes Rule 23’s implicit ascertainability requirement by proposing an administratively feasible method by which class members can be identified. In this case, Karhu’s bare proposal that the district court ascertain class members through VPX’s “sales data” was insufficient to satisfy the ascertainability requirement.
*951 III. Conclusion
Because we uphold the district court’s ascertainability decision, we affirm without reaching the district court’s Rule 23(b)(3) decision.
AFFIRMED.

. Karhu had not argued for certification pursuant to Rule 23(b)(1).

. A district court's denial of class certification is reviewed for an abuse of discretion. Little, 691 F.3d at 1305. Under the abuse of discretion standard, factual determinations are reviewed for clear error, and legal determinations are reviewed de novo. Vega v. T-Mobile, 564 F.3d 1256, 1264-65 (11th Cir.2009).

. Karhu argues that defendants have no due-process right against unverified self-identification when total liability will be established at trial, and will not change depending on the number of claims actually made. Because defendants' total liability will not be affected, it should not matter to them whether or not they are defrauded.
This argument has no force. As the Carrera court explained, a defendant's due-process right against unverified self-identification is not only about total liability: It is also about ensuring finality of judgment. Carrera, 727 F.3d at 310 ("If fraudulent or inaccurate claims materially reduce true class members’ relief, these class members could argue the named plaintiff did not adequately represent them_ When class members are not adequately represented ... they are not bound by the judgment.”). Nor is Allapattah Servs., Inc. v. Exxon Corp., 333 F.3d 1248, 1258-59 (11th Cir.2003), the only case Karhu cites in *949 support of his argument, to the contrary. In Allapattah, we held that defendants do have a due-process right to contest individual class members’ claims during postverdict claim distribution, at least when total liability has not already been established and the defendants’ defenses might affect such liability. Id. The case was not a class-certification (much less ascertainability) case, and did not foreclose the possibility that defendants’ due-process right against unverified self-identification might arise from some other concern besides total liability.

. We do not address whether self-identification-based ascertainment might also implicate the interests of absent class members in cases where total liability will be established at trial. See Carrera, 727 F.3d at 310 (“It is unfair to absent class members if there is a significant likelihood their recovery will be diluted by fraudulent or inaccurate claims.”).

. A plaintiff might establish that self-identification-based ascertainment is administratively feasible and otherwise unproblematic by proposing a case-specific and demonstrably reliable method for screening each self-identification. See Carrera, 727 F.3d at 311 (rejecting affidavit screening model for- lack of case-specificity and reliability, and remanding to "afford [the plaintiff] the opportunity to submit a[n affidavit] screening model specific to this case and prove how the model will be reliable and how it would allow [the defendant] to challenge the affidavits.”).

. We do not address the question of what, precisely, Karhu would need to produce in order to establish that the records of third-party retailers could be used to identify class members in an administratively feasible manner. In this regard, we express no opinion as to whether the Carrera court set an appropriate bar for subpoena- or third-party-retailer based ascertainment. See Carrera, 727 F.3d at 308-09 ("Carrera argues he will be able to show class membership using retailer[s’] records of sales made with loyalty cards, e.g., CVS ExtraCare cards, and records of online sales.... But there is no evidence that a single purchaser of WeightSmart could be identified using records of ... online sales. There is no evidence that retailers even have records for the relevant period.”)